IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TRAIN HOLDINGS, INC.

                       Plaintiff,

  v.                                              OPINION and ORDER

PROXIMA HOLDINGS LLC                 24-cv-547-jdp

                       Defendant.

---

This is breach of contract case involving the sale of a business pursuant to a securities purchase agreement. Plaintiff Train Holdings, Inc. alleges that defendant Proxima Holdings LLC, failed to pay the full price at final settlement. In the motion now before the court, Proxima Holdings seeks to transfer the case to the Southern District of California under 28 U.S.C § 1404(a), relying primarily on what it contends is a mandatory forum-selection clause in the purchase agreement, or alternatively, for the convenience of the parties and witnesses. Dkt. 8. Train Holdings opposes. Dkt. 13. The court concludes that the purchase agreement does not have an enforceable forum-selection clause. And neither the convenience factors nor the interests of justice favor transfer. The court will deny the motion.

BACKGROUND

The court draws the facts from Train Holdings' complaint and the materials submitted by both sides in connection with Proxima Holdings' motion to transfer. The court may look beyond to complaint to consider all factors relevant to the convenience of the parties and the interests of justice. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Here, the material facts are mostly undisputed.

Train Holdings agreed to sell a wholly owned subsidiary, Donald A. Walsh, Inc., to Proxima Holdings pursuant to a securities purchase agreement. Dkt. 9-1. Under the purchase agreement, Donald A. Walsh, Inc., was to be converted to a limited liability company, Gondola Train, LLC, and the members' ownership interests would be conveyed to Proxima Holdings. Train Holdings alleges that Proxima Holdings failed to pay the agreed price at the final settlement. Proxima Holdings counters that it did not receive all the inventory identified in the purchase agreement, and that it adjusted the payment accordingly.

Train Holdings alleges contract damages of $1,798,210.28. Dkt. 1 at 4. Train Holdings is a Wisconsin corporation with a principal place of business in Grant County, Wisconsin. *Id*. at 1. Proxima Holdings is a Delaware limited liability company with a principal place of business in San Diego, California. Dkt. 1 at 1. Proxima Holdings has two members, individuals who are both citizens of California. Dkt. 12. Thus the court has jurisdiction on the basis of diversity under 28 U.S.C. § 1332.

At the time of the sale, Gondola Train operated in Platteville, Wisconsin. The two owners of Train Holdings live in Iowa and Illinois. Dkt. 8 at 2. The majority owner of Proxima Holdings, Frank Cozza, says that he has moved Gondola Train's principal place of business to Texas. Dkt. 9. But the Gondola Train website still shows its location as Platteville.[1]

ANALYSIS

Section 1404(a) is the proper procedural mechanism to enforce a forum-selection clause seeking transfer to another federal court. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 52 (2013). The court begins with the question of whether the forum selection clause requires

---

[1] https://www.gondolatrain.com/about-us/

litigation in San Diego and whether it is enforceable. In the absence of an enforceable forum selection clause, the court will consider the convenience factor and the interests of justice under § 1404(a). *Id*. at 63.[2]

### A. Forum-selection provisions in the purchase agreement

The purchase agreement does not contain a traditional forum selection clause. The provision at issue is labelled "Consent to Jurisdiction; Service of Process." It provides:

> **11.21 Consent to Jurisdiction; Service of Process.** Subject to section 9.7 each of the parties hereby irrevocably submits to the jurisdiction of the state or federal courts located in San Diego, California in connection with any suit, action or other proceeding arising out of this agreement and the transactions contemplated hereby, and hereby agrees not to assert by way of motion, as a defense, or otherwise in any such suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this agreement or the subject matter may not be enforced by such courts.

Dkt. 9-1, at 71. (In the purchase agreement, the provision is in all caps. But the court quotes it here in upper and lower case for readability.)

---

[2] As a general rule, a federal court applies the law of the forum state. *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998). In diversity cases, federal courts turn to the forum state's choice-of-law rules. *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). Under Wisconsin choice-of-law rules for contract cases, courts apply the law of the jurisdiction with which the contract has its most significant relationship. *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 26, 251 Wis. 2d 561, 577, 641 N.W.2d 662, 670. A contractual choice-of-law provision, such as the selection of California law here, will be enforced if it does not contravene important public policies of the state whose law would apply without the choice-of-law provision. *Drinkwater v. Am. Family Mut. Ins. Co.*, 2006 WI 56, ¶ 25, 290 Wis.2d 642, 652, 714 N.W.2d 568. The court is not aware of any public policy that would be undermined by the application of California law in this case. Ultimately, the choice of law matters little because the case calls for only general principles of contract interpretation and California law closely parallels federal law when it comes to the interpretation of forum selection clauses. *See Korman v. Princess Cruise Lines, Ltd.*, 32 Cal. App. 5th 206, 216, 243 Cal. Rptr. 3d 668, 676 (Cal. App. 2019) (relying on *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989)).

The primary goal of contract interpretation is to give effect to the parties' intent, as expressed in the contractual language. *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶ 22, 326 Wis. 2d 300, 786 N.W.2d 15 (citation and quotation marks omitted); *London Mkt. Insurers v. Superior Ct.*, 146 Cal. App. 4th 648, 666, 53 Cal. Rptr. 3d 154, 168 (2007). The court begins with the plain language of the contract. *First Bank & Tr. v. Firstar Info. Servs., Corp.*, 276 F.3d 317, 322 (7th Cir. 2001) (citing *Bank of Barron v. Gieseke*, 169 Wis. 2d 437, 485 N.W.2d 426, 432 (Ct. App. 1992)). The court must construe the meaning of specific contract provisions in the context of the contract as a whole. *Tempelis v. Aetna Cas. & Sur. Co.*, 169 Wis. 2d 1, 9, 485 N.W.2d 217, 220 (1992); *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1027, 124 Cal. Rptr. 3d 105, 116 (2011).

The provision says that the parties "submit to the jurisdiction" of the courts in San Diego. But those courts wouldn't have jurisdiction until a case was filed, so the provision suggests that if litigation were filed in one of those courts, the parties would submit to its jurisdiction. The second part of the provision prohibits the parties from objecting to the convenience of the forum in "any such suit." As a matter of pure syntax, the phrase "any such suit" could mean either any suit arising from the purchase agreement or any suit filed in the courts in San Diego. But the only reasonable reading of the phrase "any such suit" would be to refer to any suit brought in the courts of San Diego. Otherwise, the second part of the provision would prohibit the parties from objecting to the convenience of litigating in any forum, regardless of where that might be.

The general rule is that "where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 643 (7th Cir. 2022) (quoting

4

*Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (further citation omitted)). It would have been easy enough to say "any dispute arising from this agreement must be brought in the state or federal courts in San Diego, California," if that's what the parties had intended. The terms of the consent-to-jurisdiction provision itself do not suggest a mandatory forum-selection clause.

A contract provision must be construed in the context of the agreement as a whole. *Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 893, 311 Cal. Rptr. 3d 393, 422 (2023), *review denied* (Nov. 21, 2023) (quoting *Zalkind*, 194 Cal. App. 4th at 1027). The consent to jurisdiction provision is one of 22 "miscellaneous" provisions in Article 11 of the purchase agreement. Three of these sections address dispute resolution: 11.7, 11.11, and 11.21. In section 11.7, the parties agreed to arbitrate most disputes involving money damages. However, the arbitration provision contains an exception for requests for injunctive relief. That exception provides:

> (c) Notwithstanding the foregoing, the request by any party for preliminary or permanent relief, whether prohibitive or mandatory, shall not be subject to arbitration and may be adjudicated only by the courts set forth in Section 11.21.

Dkt. 9-1, at 68 (Section 11.7(c)). Section 11.21 is the consent to jurisdiction provision, which refers to the courts in San Diego. So the exception to the arbitration provision would seem to require that requests for injunctive relief must be brought only in courts in San Diego. But there's a further complication.

Section 11.11 specifically addresses "Injunctive Relief." That section, with the pertinent parts bolded, provides:

> **11.11 Injunctive Relief**. The Parties agree that in the event of a breach of, or a failure by a Party to perform in accordance with, the specific terms of Section 1.5, Section 1.6, Section 6.1, Section

5

> 6.2, Section 6.3, Section 6.4, Section 6.5, Section 6.7, or Section 6.8, the aggrieved Party or Parties may be damaged irreparably and without an adequate remedy at Law. **The Parties therefore agree that in the event of a breach of Section 1.5**, Section 1.6, Section 6.1, Section 6.2, Section 6.3, Section 6.4, Section 6.5, Section 6.7, or Section 6.8, **the aggrieved Party or Parties may elect to institute and prosecute Proceedings in any court of competent jurisdiction to enforce specific performance** or to enjoin the continuing breach of such provision without the requirement of posting a bond, **as well as to obtain damages for breach of this Agreement** (subject to the limitations contained in Article 9 hereof). By seeking or obtaining any such relief, the aggrieved Party shall not be precluded from seeking or obtaining any such relief to which it may be entitled.

(emphasis added). This case involves an alleged breach of section 1.5, relating to the "closing adjustment." So, by its terms, Section 11.11 would allow Train Holdings to file suit in any court of competent jurisdiction, which would include this court on the basis of diversity.[3] So Section 11.11 contradicts Section 11.7(c) concerning the rights of the parties to select the forum for litigation of requests for injunctive relief.

The purchase agreement is 71 pages long, not including signature pages or attachments. It was negotiated by sophisticated counsel. But it ends with a collage of boilerplate miscellaneous provisions that cannot be fully reconciled. The court's objective is to discern the intent of the parties, but that objective is frustrated by the parties' carelessness in drafting the purchase agreement. Section 11.21 is a consent to jurisdiction provision that does not require

---

[3] The heading of Section 11.11 doesn't limit its application to cases involving requests for injunctive relief, because the parties agreed that the headings are not substantive:

> **11.9 Headings**. The article and section headings contained in this agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

Train Holdings to litigate in the courts in San Diego. The most clearly applicable forum-selection provision is Section 11.11, which allows Train Holdings to litigate in any court of competent jurisdiction. The court finds scant support for Proxima Holdings' contention that the purchase agreement required Train Holdings to litigate in San Diego.

The court concludes that the purchase agreement does not have an enforceable mandatory forum-selection clause that prohibits Train Holdings from litigating in this court.

**B. Convenience and the interests of justice**

The court turns to Proxima Holdings' alternative argument that the court should transfer the case under § 1404(a) to suit the convenience of the parties and witnesses and serve the interests of justice. The court considers the location of material events, the parties' access to each proposed forum, access to witnesses and other sources of proof, any local interest in the dispute, and any other benefits of either forum. *Research Automation, Inc.*, 626 F.3d at 978. Proxima Holdings has the burden of showing that transfer to the Southern District of California would be clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986).

The general rule is that a plaintiff's choice to file in its home forum is entitled to deference. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). The forum-selection provisions in the purchase agreement are contradictory, so the court does not consider those provisions to override Train Holdings' choice of forum.

This case involves a breach of contract arising out of Train Holdings' sale of Gondola Train to Proxima Holdings. At the time of the alleged breach, Gondola Train was located in Grant County, Wisconsin. Dkt. 13 at 3. The disputed inventory was located in Wisconsin. Any inspections of the inventory would have occurred in Wisconsin. Dkt. 15 at 5. This case,

like much federal civil litigation, will likely be conducted at a distance, with written discovery and electronic filings. But the material events occurred in this district, and the non-party witnesses are in Wisconsin, favoring this forum.

The majority owner of Proxima Holdings, Frank Cozza, says that after the sale, Gondola Train's principal place of business has been moved to Texas. Dkt. 9 at ¶ 6. But the declaration is conclusory, because Cozza does not explain what part of Gondola Train's operations actually moved to Texas. The Gondola Train website continues to show that it operates in Platteville, Wisconsin. In any case, it's not clear how having Gondola Train's principal place of business in Texas makes San Diego a more convenient forum than the Western District of Wisconsin.

Proxima Holdings points out that Train Holdings owners reside outside the Western District of Wisconsin. But they live in Eastern Iowa and Northern Illinois, much closer to Wisconsin than to San Diego. The only consideration that points to California is the residence of Proxima Holdings' owners. So the convenience of the parties favors neither forum, but the proximity to proof and the material events favor Wisconsin.

The interests of justice are not compelling either way. The case concerns basic contract principles, and federal courts are accustomed to applying the law of other states. Neither state has an especially strong interest in this purely private dispute.

CONCLUSION

Proxima Holdings has not shown that transfer to the Southern District of California is required by the forum-selection provisions of the purchase agreement or that transfer would be clearly more convenient. The court will deny the motion to transfer.

ORDER

IT IS ORDERED that defendant Proxima Holdings LLC motion to transfer, Dkt. 8, is DENIED.

Entered February 24, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge